# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BETHESDA ASSET SERVICES, INC., *et al.*, | * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. PJM 00-2116 |
| | * |
| THE BANK OF NEW YORK, *et al.*, | * * |
| Defendants. | * |

## MEMORANDUM OPINION

### I.

Bethesda Assets Services, Inc. ("BASI") and Louis J. Trotter, Jr. ("Trotter") have sued The Bank of New York ("BNY" or "Bank") and BNY Assets Solutions, LLC ("Asset Solutions" or "BNYAS") in two counts for breach of contract and one count for declaratory relief.

In Count I , Trotter claims that Defendants breached their obligations to him under his contract of employment as Chief Executive Officer of Asset Solutions, by wrongfully terminating him on May 17, 2000 and by failing to pay his salary for the remainder of that calendar year.

In Count II, BASI alleges that Defendants breached their contractual obligations under an Asset Purchase Agreement ("APA") dated December 15, 1998 when

1

they failed to pay BASI thirty percent (30%) of Asset Solutions' net income (a defined term) for calendar years 2000, 2001, and 2002.[1]

In Count IV, Trotter clams that he is entitled to disregard the Non-Competition and Non-Solicitation Agreement that accompanied the Asset Purchase Agreement and has sought declaratory relief to that effect.

## II.

The Court conducted a four day bench trial in this case.

At the end of the trial, with respect to Count I, the Court entered judgment as to liability in favor of Trotter and against BNY and Asset Solutions, jointly and severally, holding that Trotter was entitled to his salary for the remainder of 2000 plus prejudgment interest.

With respect to Count II, the Court entered judgment as to liability in favor of BASI and against BNY and Asset Solutions, jointly and severally, ruling that BASI was entitled to damages for calendar years 2000, 2001, and 2002, plus prejudgment interest.

As to Count IV, the Court granted declaratory relief in favor of Trotter, ruling that effective immediately he was relieved of any obligations under the Non-Competition and Non-Solicitation Agreement.

The Court reserved ruling on a number of issues:

---

[1] Early in the proceedings, the Court granted Defendants summary judgment as to Count III, a third breach of contract claim in which Trotter sought to be paid pursuant to the terms of a company Supervisory Manual. Trotter's claims for punitive damages also went out on summary judgment.

1) The amount due to Trotter as additional salary for calendar year 2000;

2) Whether, as part of his damages, Trotter could recover for lost opportunity to obtain employment in the loan servicing industry between May 30, 2000 and January 10, 2003,[2] during which time he abided by the terms of his Non-Competition and Non-Solicitation Agreement;

3) The amounts due to BASI under the APA for calendar years 2000, 2001, and 2002; and

4) Whether Plaintiffs should recover attorneys and costs from Defendants, and, if so, in their amount;

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), the Court referred these issues to Magistrate Judge William Connelly for the preparation of a Report and Recommendation. Judge Connelly heard seven days of testimony and received proposed findings of fact and supportive memoranda from the parties, including Plaintiffs' affidavit pertaining to attorneys fees and expenses and Defendants' response to same. He thereafter prepared a Report with recommendations, consisting of 72 pages. Both Plaintiffs and Defendants have filed Objections to various aspects of that Report.

---

[2] January 10, 2003 is the date this Court declared that, because of Defendants' breaches of his employment contract, Trotter was not bound by the Non-Competition and Non-Solicitation Agreement.

The matter is now before the Court on review of Judge Connelly's Report and the parties' Objections to it.

## III.

Judge Connelly has recommended:

(1) As to Count I, damages in favor of Trotter in the amount of $169,153.66, plus prejudgment interest at the rate of 9% per annum,[3] in the amount of $80,583.72, to be paid by BNY and Asset Solutions jointly and severally;

(2) That Defendants be found to have no liability to Trotter for "lost opportunity" damages during the period of his compliance with the Non-Competition and Non-Solicitation Agreement;

(3) As to Count II, damages and prejudgment interest in favor of BASI in the amount of $1,160,997 for the year 2000; damages and prejudgment interest in the amount of $1,242,185 for the year 2001; and damages and prejudgment interest in the amount of $1,148,966 for the year 2002, to be paid by Defendants jointly and severally; and

---

[3] Prejudgment interest in a diversity case is governed by state law. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487 (1941); *United States Life Ins. Co. v. Mechanics & Farmers Bank*, 685 F.2d 887, 897 (4th Cir. 1982). The parties agree that New York law controls. Under New York Civil Practice Law Sections 5001 and 5004, prejudgment interest is mandatory in actions arising out of breaches of contracts and accrues at the rate of 9% per annum. *See, e.g.*, *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 87, 90 (2d Cir. 1998).

(4)     That Plaintiffs be awarded attorney's fees and expenses in the amount of $571,004.52.

The parties' Objections will be specified as the Court considers each of Judge Connelly's relevant findings and recommendations.

## IV.

A district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings" in order to "submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion . . . ." 28 U.S.C. § 636(b)(1)(B) (2004); *see also* Fed R. Civ. P. 72(b). In reviewing the magistrate judge's report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (2004). Any party may object to the magistrate judge's findings and recommendation, and the court is bound to make a "*de novo* determination of those portions of the report . . . or recommendations to which objection is made. *Id.*; *see also Young v. Catoe*, 205 F.3d 750, 754 (4th Cir. 2000).

## V.

With regard to the Judge Connelly's findings and recommendations as to damages stemming from Defendants' liability on Count I, the parties have filed no objections. The Court concluded that Trotter was terminated without cause on May 17, 2000. At that time his salary was $275,000 per annum. To that point in 2000 BNY had paid

him $105,846.34. His remaining unpaid salary for the year, therefore, was $169,153.66 and Trotter is entitled to judgment in that amount. He is also entitled to prejudgment interest at the rate of 9% per annum. The per diem rate at 9% of $169,153.66 is $41.71. One thousand, nine hundred and thirty-two (1,932) days elapsed between May 17, 2000 and August 31, 2005, the date of Judge Connelly's Report. Prejudgment interest as of that date totaled $80,583.72.[4] In all respects, the Magistrate Judge's Report and Recommendation carefully and extensively analyzes the issue of Trotter's salary entitlement for calendar year 2000 and the Court adopts the Report and Recommendation as to Count I as its own. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

## VI.

As to Judge Connelly's proposed findings and recommendations that Trotter not recover for lost opportunity damages, only Plaintiffs have filed written objections. To recapitulate: The Court invited the parties to brief and submit evidence to Judge Connelly with respect to the issue of whether Trotter was entitled to recover such damages, which would represent the cost to him of complying with the Non-Competition Agreement and Non-Solicitation Agreement from the date of his termination on May 17, 2000 until January 10, 2003 when the Court set the Agreement aside.

---

[4] Additional prejudgment interest is due at the rate of $41.71 per day from September 1, 2005 to September 29, 2006, the date of this Opinion (394 days x $41.71@ = $16,433.74). Thus, total prejudgment interest to the date of this Opinion is $97,016.72 ($80,583.72 + $16,433.74 = $97,017.46).

The Agreement provides that Trotter may not compete "against the Company or . . . [the Bank] by owning, managing, operating, joining, controlling, or otherwise carrying on, participating in the ownership, management, operation, or control of, or being engaged or concerned with, whether as a principal, agent, independent contractor, employee, or otherwise, any business or concern engaged in the business of providing loan servicing, asset management, investor reporting and servicing, asset backed securities (the 'Business')." Trotter argues that lost opportunity damages are necessary to make him whole and that the Court should award him the $1,649,375 in lost opportunity damages, plus prejudgment interest, that Judge Connelly determined he would have earned had he not complied with the Agreement. They argue that the lost opportunity damages arise from the declaratory relief sought under Count IV rather than the breach of contract counts so that there is no double recovery or inconsistent remedy; and further point out that Trotter satisfied his duty to mitigate his lost opportunity damages. Defendants, in opposition, argue that the Report and Recommendation is sound and in this respect reiterate the arguments they raised before the Magistrate Judge. They stress that Trotter seeks damages through enforcement of the contract and at the same time asks for damages for his alleged lost opportunity to compete which, in essence, would require rescission of the contract. Under the doctrine of election of remedies, say Defendants, rescission of the Non-Competition Agreement is improper because it is inconsistent with the recovery under the contract.

The Court agrees with Defendants and accepts Judge Connelly's findings:

> Mr. Trotter has chosen to affirm the contracts he made with the Defendants by suing for damages for breach of contract. He has chosen not to rescind the contracts with the Defendants, but to enforce his rights under the contracts. The judgment of this court will make him whole by providing him, as the contracts called for, his severance pay, his installment payments and prejudgment interest. To allow lost opportunity damages would permit double recovery of damages based on inconsistent theories.

(Report ¶ 162). See *Sylvania Indus. Corp. v. Lilienfeld's Estate*, 132 F.2d 887, 893 (4th Cir. 1943) ("Rescission and an action for damages are inconsistent and cannot coexist, as one rests upon the avoidance of the contract and the other upon its affirmance." (citation omitted)); *See also Prudential Oil Corp. v. Phillips Petroleum Co.*, 418 F. Supp. 254, 257 (S.D.N.Y. 1975). Trotter's severance benefit allowing him to be paid his salary and BASI's right to collect installment payments are contingent upon Trotter's agreement not to compete. Given these reciprocal obligations, Defendants cannot fairly be held to pay benefits under the contract while Trotter is relieved of the commitments he made in exchange for these benefits.

In accordance with Fed. R. Civ. P. 72(b), the Court has made a *de novo* review of the Magistrate Judge's proposed findings and recommendations as to the issue of Trotter's claim for lost opportunity damages. In all respects, the Magistrate Judge's Report and Recommendation carefully and extensively analyzes the issues and, after considering Plaintiffs' objections, the Court adopts as its own that lost opportunity damages are not recoverable. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

## VII.

Defendants object to Judge Connelly's proposed findings and recommendations as the amounts due BASI based on Defendants' liability under Count II.[5] They argue that his calculations are fundamentally flawed and plainly erroneous, and urge that specific adjustments to revenue and expense items be made. Defendants begin by challenging Judge Connelly's interpretation of the parties' agreement under the Second Amendment to the APA, which governs the calculation of installment payments to be made to BASI out of Asset Solutions' pre-tax net income. They argue that Judge Connelly has read new record-keeping requirements into the Agreement and has improperly included certain revenue and improperly excluded certain expenses to arrive at the net income figures, hence the amounts due and payable to BASI for 2000, 2001, and 2002. Defendants also challenge Judge Connelly's utilization of a revenue ratio to determine income as opposed to the tools and data they offer. They also contend that certain other expense items must be recalculated because they are dependent upon other expense items, such as Salaries, Rent, Outside Programming Help and Bank Charges, which are erroneously calculated. Defendants point specifically to Depreciation (for Furniture and Equipment) calculations as being related to the Rent expense (Report ¶¶ 93, 117) and Bonus, Benefits and Travel and Entertainment expenses as being related to Salary allocations. (Report ¶¶ 92, 119, 120.)

---

[5] Plaintiffs have informed the Court that, on reviewing Defendants' objection regarding calculations, they agree on one necessary correction to the Report and Recommendation. They agree that the limited salary allocations for 2001 contain a mathematical error and that BASI's expenses for 2001 should be increased by $75,422. The Court will accept that correction.

Having conducted a *de novo* review of the evidence presented to Judge Connelly, the Court adopts his proposed findings of fact and conclusions of law as its own. First, the evidence clearly shows that Defendants failed to comply with the requirements of the Second Amendment to the APA to maintain meaningful internal records during the period 2000-2002 so as to be able to fairly calculate BASI's "Business." But even if Defendants had no contractual duty to maintain such records, it is most assuredly the case that Defendants had an obligation to exercise good faith in calculating what was due to BASI and that obligation they did not fulfill. Judge Connelly was also correct in finding that Defendants had no customary accounting practice in place. He was fully justified in crafting tools, such as a revenue ratio, to calculate what was due BASI rather than adopting Defendants' proposed alternatives, which were based on selective and anecdotal information.

As to Count II, the Court agrees with Judge Connelly that Defendants are jointly and severally liable to BASI for 30% of the pre-tax Net Income of Asset Solutions for the years 2000, 2001, and 2002 as follows. For the year 2000, Defendants owe BASI $824,091 in principal and prejudgment interest on that amount at the rate of 9% per annum through the date of the Magistrate Judge's Report, or $336,906.[6] For the year 2001,

---

[6] All initial calculations of prejudgment interest are taken from the Report and Recommendation. They are calculated through August 31, 2005, the date the Report and Recommendation was issued. Here and throughout, however, prejudgment interest must be calculated through the date of this Opinion, *i.e.* September 29, 2006. Per diem interest at 9% per annum on principal of $824,091 is $203.20. September 1, 2005 to September 29, 2006 includes 394 days which results in additional prejudgment interest due of $80,060.80 (394 x $203.20 =

Defendants owe BASI $919,259.40 in principal[7] and prejudgment interest on that amount at the rate of 9% per annum, or $293,084.31.[8]  Finally, for the year 2002, Defendants owe BASI $935,016 in principal and prejudgment interest at the rate of 9% per annum to the date of Judge Connelly's Report, or $213,950.[9]

## VII.

With regard to Judge Connelly's proposed findings and recommendations as to Plaintiffs' entitlement to attorney's fees and expenses and his calculation of those amounts, both Plaintiffs and Defendants have filed objections.

Plaintiffs agree with Judge Connelly's findings and conclusions insofar as he has interpreted the APA to make Defendants contractually liable to pay the legal fees and expenses incurred arising from any breaches of the "agreements and covenants" in the APA (Report ¶¶ 163-179).  They also agree with his determination that attorney's fees are a "Loss" subject to reimbursement (Report ¶¶ 163-164, 179); that Plaintiffs gave Defendants

---

$80,060.80).

[7] This calculation incorporates the mathematical correction of the item in the Report and Recommendation that Plaintiffs concede. BASI's expenses for 2001 should have been increased by $75,422, changing its expenses for the conduct of the "Business," as defined in the Second Amendment to the APA, which results in total pre-tax net income of the Business for that year of $3,064,198.

[8] Per diem interest on $919,259.40 at 9% per annum is $226.67. Additional prejudgment interest to the date of this Opinion is $89,307.98 ($919,259.40 x .09 ÷ 365 = $226.67) (394 x $226.67 = $89,307.98).

[9] Additional prejudgment interest per the above is $90,836.70 ($935,016 x .09 ÷ 365 = $230.55) (394 x $230.55 = $90,836.70).

"adequate timely notice" of their claims that Defendants had breached the agreements or contracts (Report ¶ 179); that Defendants were not materially prejudiced (*Id.*); that Plaintiffs' fees were reasonable given the "complexity of the issues, the scope and amount of work entailed in presenting the Plaintiffs' case or the qualifications and ability of counsel" (Report ¶ 191, *see generally* ¶¶ 180-192), and that Plaintiffs' right of recovery is not otherwise subject to reduction by reason of Defendants' claim that they are entitled to a $50,000 deductible (Report ¶ 193). Plaintiffs take issue, however, with the Judge's recommendation that their fee request be reduced by 75%, based on his view that "plaintiffs were [only] successful on 75% of their counts litigated in the liability phase of the case and on 75% of their damage claims." (Report ¶ 191). Plaintiffs thus argue that the fee award should be increased from $571,004.52 to $683,464.11 because they were more successful than Judge Connelly gives them credit for and because the fees and expenses expended on the limited issues on which Plaintiffs did not prevail were only a small fraction of the more than $190,000 in legal fees and expenses that the Judge disallowed.

Defendants, for their part, argue that Plaintiffs' claim for fees is contractually barred because Plaintiffs did not timely file a request for indemnification under the APA, which Defendants allege has a survival clause requiring claims to be made within 2 years of the contract's closing. Since the closing in this case took place on January 7, 1999, Defendants argue that the request for indemnification should have been raised by January, 2001, but since it was not raised until closing arguments following the liability trial in this

case in January 2003, it is barred. Defendants further note that, even if the claim for fees and expenses was timely made, they do not fall within the definition of "Loss," as provided in the APA. That term is defined as "any and all losses, damages, Liabilities, expenses (including, but not limited to, reasonable fees and disbursements of counsel), claims, assessments, judgments, liens and other obligations." APA Section 1.01, but Defendants say that the Loss provision must be read in conjunction with Section 10.03 of the APA which states that a claim for a breach of a representation, warranty, or covenant must be brought as a claim for indemnification. A claim for indemnification, they say, cannot be considered as such unless specifically denominated as such. In other words, a claim for indemnification for attorney's fees is required to have been separately set forth in the Complaint and cannot be subsumed or implied in a breach of contract claim brought independently of the indemnification provision. Further, Defendants argue that Plaintiffs never provided them the contractually required notice that they were pursuing an indemnification claim, and that to permit assertion of this new claim would materially prejudice Defendants. Finally, insofar as any amount may be owed to Plaintiffs, Defendants argue that the Report erroneously fails to take account of the $50,000 deductible set forth in the APA.

With regard to this claim, the Court has carefully reviewed Judge Connelly's in this regard Proposed Findings of Fact and Recommendations and the parties' Objections to them. The indemnification clause does in fact obligate Defendants to reimburse Plaintiffs for their attorneys fees and costs incurred in prosecuting their claims for breach of covenants

13

and agreements contained in the APA, including Trotter's employment agreement and the agreement to pay BASI 30% of the pre-tax net income for 2000, 2001 and 2002. This indemnification does not require a separate cause of action as Defendants argue and Defendants received adequate timely notice of the claim. In any event, Defendants have not been materially prejudiced.[10]

That said, Plaintiffs were only successful on three of their four claims in terms of liability and three of their four claims in terms of damages. The Court finds that Judge Connelly's application of a 75% factor to Plaintiffs' fee request is a sound measure under the circumstances and that a total award of $571,014.52 as fees and expenses is reasonable.

In all respects, as to attorney's fees and expenses due to Plaintiffs from Defendants, the Magistrate Judge's Report and Recommendation carefully and extensively analyzes the issues. After considering both Plaintiffs' and Defendants' objections, the Court adopts the Report and Recommendation as to this issue.

## VIII.

The Court is satisfied, after *de novo* review of the findings of fact and conclusions of law proposed by Judge Connelly, that the parties' objections to same should

---

[10]

As for Defendants' claim of prejudice, following the Court's determination that Defendants were liable to Plaintiffs on Counts I and II of the Amended Complaint, Defendants were given the opportunity to pursue discovery on the attorney's fees and expense issue, including the taking of appropriate depositions. The Court also indicated that the parties could designate experts on the issue and submit briefs with respect to it. Over the many months following the Court's liability determination, Defendants as well as Plaintiffs engaged in extensive discovery relative to this issue. They laid a complete record before Judge Connelly, accompanied by ample briefing. There has been no prejudice to the Defendants with respect to this issue.

be overruled. Accordingly (with the one minor mathematical correction), the findings and conclusions proposed by him in his written Report and Recommendations dated August 30, 2005, will be adopted by the Court as its own.

An Order will issue overruling the parties' objections and adopting the Magistrate Judge's findings of fact and conclusions of law.

A separate Final Order of Judgment will issue summarizing the amount of the judgments entered in favor of Plaintiffs and against Defendants.

                                                                 /s/
                                **PETER J. MESSITTE**
**September 29, 2006**                **UNITED STATES DISTRICT JUDGE**